**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-02055-NYW-MEH

AARON SANDERS, individually and as next friend of E.S., a minor; J.S., a minor; W.S., a minor; and A.S., a minor; and
JULIE SANDERS, individually and as next friend of E.S., a minor; J.S., a minor; W.S., a minor; and A.S., a minor;

      Plaintiffs,

v.

POLARIS INDUSTRIES, INC.,
POLARIS INDUSTRIES, INC., and
POLARIS SALES INC.,

      Defendants.

---

## ORDER ON MOTION FOR DETERMINATION OF LAW

---

This matter is before the Court on Plaintiffs' Motion for Summary Judgment to Determine Substantive Law and Brief in Support (the "Motion" or "Motion for Determination of Law") [Doc. 77]. Upon review of the Motion and the related briefing, the applicable case law, and the entire case file, the Court concludes that oral argument will not materially assist in the resolution of this matter. For the following reasons, the Motion for Determination of Law is **GRANTED**.

## BACKGROUND

On or about September 16, 2020, Plaintiff Aaron Sanders ("Mr. Sanders") was operating an off-road vehicle—a Polaris Ranger (the "Vehicle" or "Ranger")—in San Juan County, Colorado. [Doc. 80 at ¶ 4.01]. Plaintiff Julie Sanders ("Ms. Sanders," and collectively with Mr. Sanders, "Plaintiffs") and Plaintiffs' four minor children were passengers in the Vehicle. [*Id.* at ¶ 4.02]. As Mr. Sanders "attempt[ed] to descend a steep hill," the Ranger's brakes malfunctioned,

resulting in the Vehicle gaining speed during the descent. [*Id.* at ¶ 4.03]. The Vehicle "completely left the roadway and rolled several times down the side of the hill, for approximately 200ft, and over an 18ft cliff before landing upright." [*Id.*]. Plaintiffs allege that as a result of this incident, they have suffered serious injuries. [*Id.*].

Plaintiffs allege that Defendants—Polaris Industries, Inc., Polaris Industries, Inc., and Polaris Sales, Inc. (collectively, "Polaris" or "Defendants")—"designed, tested, manufactured, constructed, marketed, distributed, sold and/or placed [the Vehicle] into the stream of commerce by and through the agents and/or representatives of Polaris." [*Id.* at ¶ 5.01]. According to Plaintiffs, "[a]t the time the Vehicle left . . . Polaris'[s] control, it was defective and unreasonably dangerous in that it was not adequately designed, manufactured, or marketed to minimize the risk of injury." [*Id.* at ¶ 5.07]. Specifically, Plaintiffs assert that the Ranger's brake system was defectively designed, manufactured, and marketed; the Ranger failed to incorporate an emergency braking system; and the warnings and instructions for the Ranger "were inadequate." [*Id.*]. Plaintiffs similarly allege that Defendants breached their duty of care, and were thus negligent, by, *inter alia*, failing to monitor the performance of the Ranger, failing to adequately test the Ranger, failing to adequately design and test the brake system, and failing to adequately design and test the emergency brake system. [*Id.* at ¶ 6.02].[1]

Plaintiffs initiated this civil action on December 30, 2020 in the United States District Court for the Western District of Texas ("Western District of Texas"), [Doc. 1], and Defendants filed a Motion to Dismiss for Improper Venue or Transfer to the District of Colorado. [Doc. 7]. United States Magistrate Judge Mark Lane recommended that this case be either dismissed without

---

[1] Plaintiffs do not plainly set forth the specific causes of action asserted against Defendants; instead, they assert general "Strict Liability Claims Against Defendants" and "Negligence Claims Against Defendants." [Doc. 80 at 5, 8].

prejudice or transferred to the District of Colorado under 28 U.S.C. § 1406(a). [Doc. 16 at 11]. However, before United States District Judge Lee Yaekel entered an order adopting or rejecting the Recommendation, Plaintiffs filed "Plaintiffs' Agreed Motion to Transfer Venue to the District of Colorado" (the "Unopposed Motion to Transfer"), representing that the Parties had "agreed that venue is proper in the District of Colorado and the case should be transferred there." [Doc. 18 at 2]. Judge Yaekel granted the Unopposed Motion to Transfer and the case was transferred to this District on July 29, 2021. [Doc. 19; Doc. 20].

After the case was transferred, the Parties filed a "Joint Motion for Leave for Plaintiffs to Amend their Original Complaint," wherein the Parties stated that they agreed that "Plaintiffs should be permitted to amend their [C]omplaint to state their claims under Colorado law, if they so choose." [Doc. 28 at 1]. The Honorable Michael E. Hegarty granted the Motion to Amend, [Doc. 30], and on August 27, 2021, Plaintiffs filed their Amended Complaint. [Doc. 31]. Plaintiffs filed a Second Amended Complaint with leave of Court on December 6, 2022. [Doc. 80]. In the Second Amended Complaint, Plaintiffs do not assert their claims pursuant to any particular state's law. *See generally* [*id.*].

On December 2, 2022, Plaintiffs filed their Motion for Determination of Law. [Doc. 77]. In the Motion, they seek a Court ruling that Texas law (or, alternatively, Minnesota law) applies in this case. [*Id.* at 3].[2] Defendants responded on January 6, 2023, arguing that Colorado law should apply. [Doc. 85]. Plaintiffs did not file a reply brief, and their time to do so has elapsed. Accordingly, the matter is fully briefed, and the Court considers the Parties' arguments below.

---

[2] The choice-of-law issue was first raised by the Court in the context of Defendants' Motion to Dismiss. [Doc. 63]. Defendants' Motion to Dismiss was denied as improper pursuant to Rule 12(g)(2), without the resolution of the choice-of-law issue. [Doc. 68].

## LEGAL STANDARD

The Federal Rules of Civil Procedure do not expressly contemplate motions for a determination on a question of law. *See Losasso v. Toter*, No. 06-cv-02602-REB, 2008 WL 681467, at *1 (D. Colo. Mar. 7, 2008). However, where a party "seek[s] a determination of an issue of law based on facts that are not in dispute,"[3] courts in this District have permitted such motions under Rule 56. *Id.*; *see also Copper Creek, Inc. v. State Farm Fire & Cas. Co.*, No. 21-cv-01603-PAB-MEH, 2022 WL 375574, at *2 (D. Colo. Feb. 7, 2022); *Okland Constr. Co., Inc. v. Phoenix Ins. Co.*, No. 11-cv-02652-LTB-BNB, 2014 WL 884690, at *2 (D. Colo. Mar. 6, 2014); *but see Price v. Am. Fam. Mut. Ins. Co., S.I.*, No. 18-cv-03209-WJM-STV, 2020 WL 948710, at *1 (D. Colo. Feb. 27, 2020) ("[T]he consensus among courts that have considered the issue is that factual questions going to choice of law are akin to factual questions going to jurisdiction and venue, and are thus resolvable by the Court.").

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation omitted).

---

[3] In their Response, Defendants deny some of Plaintiffs' assertions of fact. *See* [Doc. 85 at 3–4]. However, for the reasons set forth below, there are no material disputes of fact that preclude this Court from engaging in a choice-of-law analysis.

## ANALYSIS

### I.      Applicable Law

This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.  *See* [Doc. 80 at ¶ 3.01].  Typically, a federal court sitting in diversity "must apply the substantive law of the state in which it sits, including the forum state's choice-of-law rules."  *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 123 F.3d 1351, 1352–53 (10th Cir. 1997).  Following this general practice, the Parties raise arguments under Colorado law.  *See, e.g.*, [Doc. 77 at 5; Doc. 85 at 6]. "However, where a case is transferred from one forum to another under 28 U.S.C. § 1404(a), . . . then the transferee court must follow the choice of law rules of the transferor court."  *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 635–37 (1964)).  An exception to this rule exists when the transfer was to cure a jurisdictional defect; in those circumstances, the choice-of-law analysis is based on the transferee court's choice-of-law principles.  *See Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1209 (10th Cir. 2001).

As mentioned above, early in this case Defendants moved to dismiss the case, or alternatively transfer venue, based on improper venue.   [Doc. 7].   Judge Lane issued a Recommendation recommending that the case be either dismissed without prejudice or transferred to the District of Colorado pursuant to 28 U.S.C. § 1406(a).  [Doc. 16 at 10]; *see also* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").  Prior to a ruling on the Recommendation, Plaintiffs filed their Unopposed Motion to Transfer.  [Doc. 18].  The Unopposed Motion to Transfer does not assert a statutory basis for the transfer request and states simply that "the parties

have agreed that venue is proper in the District of Colorado and the case should be transferred there."  [*Id.* at 2].  Similarly, Judge Yaekel's order granting the Unopposed Motion to Transfer does not assert a statutory basis for the transfer.  *See* [Doc. 19].

Though the circumstances of the transfer of this case to this District render it slightly unclear under what statutory provision this case was transferred, the Court construes the Unopposed Motion to Transfer as having been granted pursuant § 1404(a).  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action . . . to any district or division *to which all parties have consented*."  28 U.S.C. § 1404(a) (emphasis added).  The Unopposed Motion for Transfer reflects that all Parties agreed that this case should be transferred to the District of Colorado.  [Doc. 18 at 2].  Accordingly, the Court must apply Texas choice-of-law rules.  *Trierweiler*, 90 F.3d at 1532; *see also Menendez ex rel. Menendez v. Wal-Mart Stores Inc.*, No. 1:10-cv-53, 2011 WL 2037006, at *2 (N.D. Ind. Mar. 30, 2011) (applying Texas choice-of-law principles when the case had been transferred from the Southern District of Texas under § 1404), *report and recommendation adopted*, 2011 WL 2037610 (N.D. Ind. May 24, 2011).[4]  Although the Court applies Texas choice-of-law principles and the Parties have not raised arguments under Texas law, the Court notes that both Texas and Colorado apply the most-significant-relationship test set forth in the Restatement (Second) of Conflict of Laws.  *See Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 951 (S.D. Tex. 2011); *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 510 (Colo.

---

[4]  Even if this Court were to consider the Western District of Texas's transfer as one under Rule 12(b)(3) and 28 U.S.C. § 1406, it is clear that the transfer was one based on venue, not jurisdictional principles.  *See 1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1052 n.13 (10th Cir. 2006) ("Venue is sometimes confused with jurisdiction.  However, the two concepts are quite different." (brackets omitted)); *Ifill v. Potter*, No. CIV.A. 05-2320 (RWR), 2006 WL 3349549, at *2 (D.D.C. Nov. 17, 2006) (observing that "[v]enue is not jurisdictional").

2007). Thus, the Parties' substantive arguments are equally applicable to this Court's choice-of-law analysis.

## II.    The Restatement's Most Significant Relationship Test

If a conflict of law exists, "Texas directs courts to employ the 'most significant relationship' test as stated in the Restatement." *Quicksilver*, 792 F. Supp. 2d at 951. The Restatement first sets forth a list of general factors "relevant to the choice of the applicable law":

(a)    the needs of the interstate and international systems,

(b)    the relevant policies of the forum,

(c)    the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d)    the protection of justified expectations,

(e)    the basic policies underlying the particular field of law,

(f)    certainty, predictability and uniformity of result, and

(g)    ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws ("Restatement") § 6 (1971). In addition, the Restatement instructs that a court should apply the law of the state with the most significant relationship to the case at hand, "applying the principles of § 6" and taking into account the following factors:

(a)    the place where the injury occurred,

(b)    the place where the conduct causing the injury occurred,

(c)    the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d)    the place where the relationship, if any, between the parties is centered.

*Id.* at § 145.  And finally, Section 146 of the Restatement, which applies to personal injury actions, states:

> the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

*Id.* at § 146.  This provision creates a "presumption in favor of applying the law of the place of the injury."  *Enter. Prods. Partners, L.P. v. Mitchell*, 340 S.W.3d 476, 480 (Tex. App. 2011).

"In deciding choice of law issues, the number of contacts is not determinative."  *Toyota Motor Co. v. Cook*, 581 S.W.3d 278, 284 (Tex. App. 2019).  Instead, "courts must examine the contacts in light of state policies underlying the specific substantive issue."  *Id.*  In addition, the Court does not "make a blanket determination" that the law of a particular jurisdiction applies to the case as a whole.  *Id.*  Rather, "[t]he Court applies the significant relationship test issue-by-issue."  *Perez v. ZTE (USA), Inc.*, No. 3:18-cv-2948-B, 2020 WL 3798865, at *2 (N.D. Tex. July 6, 2020).  As a result, courts in Texas often determine choice-of-law issues governing liability separately from choice-of-law issues governing damages.  *See, e.g.*, *Bain v. Honeywell Int'l, Inc.*, 257 F. Supp. 2d 872, 875 (E.D. Tex. 2002) ("[I]t is necessary for the court to analyze liability and damages separately."); *Toyota Motor Co.*, 581 S.W.3d at 284–89; *Perez*, 2020 WL 3798865, at *4–11.

## III.   Choice-of-Law Analysis

The first step in a court's choice-of-law analysis is to determine whether an outcome-determinative conflict of law actually exists.  *McManaway v. KBR, Inc.*, No. 4:10-cv-1044, 2015 WL 13310061, at *5 (S.D. Tex. Aug. 9, 2015).  If there is no such conflict, the Court does not

engage in a choice-of-law analysis. *Toyota Motor Co.*, 581 S.W.3d at 283 ("We only undertake a choice of law analysis if a conflict of law exists that affects the outcome of an issue.").

Plaintiffs argue that there is an outcome-determinative conflict of law here because Colorado caps non-economic damages, but Texas and Minnesota do not. [Doc. 77 at 3]. Defendants do not dispute that a material conflict exists or otherwise identify any other purported conflict of law. *See generally* [Doc. 85]. Courts have concluded that a conflict of law as to limitations on damages creates an actual, outcome-determinative conflict of law. *See, e.g.*, *Quicksilver*, 792 F. Supp. 2d at 954 (finding that a conflict between states' punitive damages limitations "may or may not ultimately have an impact on the final judgment in the case, but the possibility exists that it could"); *Baldschun v. Action Res., LLC*, No. 1:19-cv-49, 2021 WL 1410033, at *7 (E.D. Tenn. Mar. 16, 2021) (applying Texas choice-of-law rules); *Iskowitz v. Cessna Aircraft Co.*, No. 07-cv-00968-REB-CBS, 2010 WL 3075476, at *3 (D. Colo. Aug. 5, 2010); *Stromenger v. Novartis Pharms. Corp.*, 941 F. Supp. 2d 1288, 1296 (D. Or. 2013). This Court agrees that a conflict exists with respect to compensatory damages between Colorado law, on the one hand, and Texas and Minnesota law on the other.

Under Texas's choice-of-law framework, "[t]he first question is whether the particular substantive law is subject to a clear choice of law determination by the Legislature of the forum state." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 443 (Tex. 2007). The Parties have not directed the Court to any statutory directive and the Court could not locate any such directive; for this reason, the Court next turns to § 146 of the Restatement. *See Perez*, 2020 WL 3798865, at *6. Section 146 provides that, in personal injury actions, the law of the state where the injury occurred will apply "unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties."

Restatement § 146.  Here, both Parties proceed as if this presumption applies.  *See* [Doc. 77 at 3; Doc. 85 at 6].

However, "in the context of compensatory damages,[5] the Texas Supreme Court has indicated that the state of injury and the state of the tortious conduct are less important."  *Perez*, 2020 WL 3798865, at *6 (footnote added); *see also Torrington Co. v. Stutzman*, 46 S.W.3d 829, 849 (Tex. 2000) ("Considering the purpose of compensatory damages, contacts such as the site of the injury or where the tortious behavior occurred, which are important in determining which state's laws govern liability, are less important.").  Instead, "the most important contacts in determining which state's law governs compensatory damages will usually be the ones with the most direct interest in the plaintiff's monetary recovery and/or the most direct in protecting the defendant against financial hardship."  *Torrington*, 46 S.W.3d at 849 (quotation omitted); *see also* Restatement § 145 (stating that "contacts are to be evaluated according to their relative importance with respect to the *particular issue*" (emphasis added)).

Here, the sole conflict of law identified by the Parties is the fact that Colorado law caps non-economic damages, while Texas and Minnesota law do not.  It follows that "the presumption set forth in § 146 carries little force in the choice-of-law analysis for issues related to compensatory damages."  *Perez*, 2020 WL 3798865, at *6.  Instead, the Court affords most weight to the relevant states' "interests in ensuring Plaintiff[s'] recovery and protecting Defendants."  *Id.*[6]  "The

---

[5] "Compensatory damages in Texas include economic and noneconomic damages."  *Toyota Motor Co.*, 581 S.W.3d at 289.

[6] Courts in other jurisdictions, including Colorado courts, have reached this same conclusion where a conflict of law concerns the computation or allocation of damages.  *See, e.g.*, *Sabell v. Pac. Intermountain Express Co.*, 536 P.2d 1160, 1165–66 (Colo. App. 1975) (distinguishing between "rules of conduct," which are "are designed to protect the public in general from acts committed within the state" and "are more closely related to the state where the conduct occurs," and "rules of recovery," which "relate more clearly to the state with which a party is identified"); *Wilson v. Image Flooring, LLC*, 400 S.W.3d 386, 398 (Mo. Ct. App. 2013) ("Where the issue involves a

[plaintiff's] domiciliary state usually has a strong interest in seeing its compensatory damages law applied; however, the other Restatement factors must still be considered." *Baldschun*, 2021 WL 1410033, at *7.  With this framework in mind, the Court turns to the factors set forth in § 145 of the Restatement and then the policy considerations recognized in § 6.

### A.      The Place of the Injury

It is undisputed that the subject injuries occurred in Colorado.  *See* [Doc. 77 at 7; Doc. 85 at 8].  Plaintiffs argue, however, that the location of the injury should be given less weight in this case because it is fortuitous.  [Doc. 77 at 7].  They contend that although the incident occurred in Colorado, "it could have happened anywhere," and Colorado's interests are not furthered by applying Colorado law involving a fortuitous contact with non-Colorado-based parties.  [*Id.* at 8, 10].  In response, Defendants contest the notion that the location of the injury was fortuitous, asserting that Plaintiffs intentionally traveled to Colorado, Plaintiffs intentionally purchased the Vehicle for use in Colorado, and only used the Vehicle in Texas "sparingly."  [Doc. 85 at 9].

The place of the injury plays a less important role in the choice-of-law determination when the place of injury is fortuitous, or has "little relation to the occurrence and the parties with respect to the particular issue."  *Stevenson v. Ford Motor Co.*, 608 S.W.3d 109, 125 (Tex. App. 2020) (citing Restatement § 145 cmt. e). Courts in Texas have applied the doctrine of fortuity in cases involving automobile crashes like this one.  *See, e.g.*, *id.*; *Marines v. UPS Ground Freight, Inc.*, No. DR-08-cv-002-AML/DGG, 2008 WL 11411462, at *2 (W.D. Tex. Sept. 29, 2008); *see also* 8A Tex. Jur. 3d Automobiles § 677 ("In applying the 'most significant relationship' test to automobile accident cases, Texas does not view the fortuitous location of the accident as

---

right of recovery as opposed to a question of liability, the domicile of the parties becomes a highly significant contact, as states have a great interest in applying their own compensation-related laws to their own residents, but very little interest in applying those same laws to non-residents.").

determinative of the law to be applied, especially if the parties cross from one state to another regularly and frequently.").

However, other courts have also determined that injuries sustained in a location to which the plaintiff intentionally traveled are not fortuitous. *See, e.g.*, *Malik v. Cooper Tire & Rubber Co.*, 59 F. Supp. 3d 686, 693–94 (D.N.J. 2014) ("The location was not fortuitous simply because the tire could have blown out somewhere else. . . . Plaintiff intended to be in Illinois and to travel on Illinois land.  Illinois was not a fortuitous location."); *Jason v. Nat'l R.R. Passenger Corp.*, No. CV 17-7873, 2020 WL 5036187, at *4 (D.N.J. Aug. 26, 2020) (concluding that injury that occurred along a set and planned train route was not fortuitous because the plaintiff "could have reasonably anticipated being in the five states [on the route] while traveling on the [train]"); *Williams v. Terex-Telelect, Inc.*, No. 01-cv-3770, 2003 WL 22431920, at *1 (E.D. Pa. May 19, 2003) ("[I]f a party intentionally and voluntarily enters a state, the fact that an accident occurs there is not fortuitous."); *but see Banuelos Rios v. Ford Motor Co.*, No. 05-0019 CO, 2006 WL 2950474, at *7 (D. Or. Oct. 16, 2006) (concluding that the fact that the plaintiffs "entered Mexico intentionally and voluntarily" did not factor into the court's analysis on whether Mexico or Oregon law applied).

The Parties do not cite, and the Court could not locate, any Texas cases directly assessing whether a plaintiff's intentional travel into a different state renders an injury suffered in that state fortuitous.  In *Stevenson*, the Texas Court of Appeals found that the place of the injury was fortuitous because the decedent was just "passing through" the state at the time of the accident, which is analogous, but not directly on point, to this case.  *See Stevenson*, 608 S.W.3d at 125.  In *Marines*, the court concluded at the motion-to-dismiss stage that an injury caused in Arkansas by a Tennessee-based delivery driver was fortuitous, hypothesizing that "[e]ven if Defendant's employee crossed the Arkansas state line and traveled on an Arkansas interstate *on a daily basis*,

Texas courts would still likely conclude that the location of this automobile accident on the Arkansas highway was fortuitous." *Marines*, 2008 WL 11411461, at *3 (emphasis added). However, the *Marines* court's prediction as to how a Texas court *would* rule does not provide definitive guidance to this Court in its choice-of-law analysis.

There is no dispute that the Vehicle was sold in Texas, to Texas residents. *Compare* [Doc. 77 at 4] *with* [Doc. 85 at 3]. As for Defendants' arguments and evidence, the Court is respectfully unpersuaded that Mr. Sanders's history of traveling to Colorado as a child or the fact that Plaintiffs had previously traveled to Colorado and used the Vehicle in Colorado, *see* [Doc. 85 at 8–9], is relevant to the Court's determination as to whether the injury at issue *in this* case was fortuitous. Indeed, Defendants cite no legal authority demonstrating that a plaintiff's previous contacts with a state render their future injuries within that state non-fortuitous. Furthermore, Defendants' assertion that Mr. Sanders used the Vehicle in Texas "sparingly," *see* [*id.* at 9], is not entirely supported by the cited evidence. In his deposition, Mr. Sanders was asked how often he operated the Vehicle prior to the accident. [Doc. 85-5 at 74:4].[7] He responded that "[t]here would be times it would sit unoperated for months, . . . and there would be times it was used on a daily basis." [*Id.* at 74:5–7]. He continued:

> [o]nce we started spending more time at the ranch, we used it for ranch purposes, hauling – you know, driving around, checking deer feeders, taking the kids down to the creek to go fishing. You know, we'd drive it around the ranch probably three or four times a week once we started spending more time out there.

[*Id.* at 74:7–13]. He then explained that this more frequent use of the Vehicle occurred "[i]n the last year" before the accident. [*Id.* at 74:14–17].

---

[7] When citing to transcripts, the Court cites the document number generated by the CM/ECF system but the page and line numbers generated by the transcript.

"Fortuitous" is defined as "[o]ccurring by chance; accidental." *Fortuitous*, Black's Law Dictionary (11th ed. 2019); *cf.* Restatement (First) of Contracts § 291 (1932) (in the context of contracts, "[a] fortuitous event within the meaning of the present and subsequent Sections is an event which so far as the parties to the contract are aware, is dependent on chance.  It may be beyond the power of any human being to bring the event to pass; it may be within the control of third persons.").  The closest evidence that the place of injury was not fortuitous was that Mr. Sanders testified that he purchased the Vehicle to take his family on four-wheel drive roads in Silverton, Colorado.  [Doc. 85-5 at 63:18–23].  While Plaintiffs were not in Colorado by chance and had intentionally traveled to the state with their Vehicle, the fact that the Vehicle's brakes allegedly failed while driving in Colorado—and not during the three to four times per week that Plaintiffs operated the Vehicle in Texas in the year preceding the accident—was by chance. Accordingly, while this factor weighs in favor of applying Colorado law, it does so only slightly, given the fortuity of the place of injury and the guidance from Texas courts that this factor is "less important" than others.  *Perez*, 2020 WL 3798865, at *6.

### B.      The Place Where the Injury-Causing Conduct Occurred

Next, the Court must consider the place where the conduct that caused the injury occurred. Restatement § 145.  "In a products-liability action, the 'place where the conduct causing the injury occurred' is the place where the defendant designed, manufactured, or was otherwise involved with the product in question, not the location of the physical injury."  *Stevenson*, 608 S.W.3d at 126 (citing *Perry v. Aggregate Plant Prods. Co.*, 786 S.W.2d 21, 25 (Tex. App. 1990)).

Plaintiffs contend that "the conduct causing the injury is split between two locations[:] (1) the location where the decision was made to not include a redundant braking system in a vehicle Polaris knows will be used on hilly/mountainous terrain across the U.S.; and (2) the location where

14

this vehicle was advertised, marketed, distributed, and sold." [Doc. 77 at 10]. Plaintiffs argue that Minnesota is the state in which the vehicle was designed and manufactured and Texas is the state in which the Vehicle was advertised, marketed, distributed, and sold; however, this assertion is supported by no record evidence. *See* [*id.* at 10–11]. In their Response, Defendants "[a]dmit[] that Polaris distributed the [Ranger] at issue in this lawsuit to a dealership in Texas." [Doc. 85 at ¶ 3]. They deny that the Vehicle "was designed wholly in Minnesota," instead asserting that the design process for the vehicle, "which includes development, concept production, and testing, took place in numerous states including Minnesota, Colorado, Arizona, Louisiana, and California." [*Id.* at ¶ 7]. In addition, Defendants deny that the Vehicle was manufactured in Minnesota, representing instead that the vehicle was manufactured in Alabama. [*Id.* at ¶ 8].

Insofar as Defendants assert that the Vehicle's "development, concept production, and testing" took place in "numerous states," including Minnesota, Colorado, Arizona, Louisiana, and California, [*id.* at ¶ 7], the evidence Defendants cite in support establishes only that the Vehicle was tested in those states; it does not plainly establish that the development of the design or concept production occurred in those states. *See* [Doc. 85-2 at 1; Doc. 85-3 at 60:7–19]. While Plaintiffs' claims are based *in part* on a failure to adequately test the Vehicle, they are also based on Defendants' alleged failure to adequately design, manufacture, market, and provide warnings for the Vehicle. *See* [Doc. 80 at ¶¶ 5.07, 6.02]. Furthermore, Defendants have not submitted any evidence demonstrating how much testing was done in any of the five listed states, thus precluding the Court's ability to determine if this factor weighs in favor of applying any particular state's laws. Because the Court cannot meaningfully determine where the injury-causing conduct primarily occurred, the Court concludes that this factor is neutral.

C.      **The Location of the Parties**

The location of the Parties—Plaintiffs' domicile and Defendants' states of incorporation

and principal places of business—is "especially weighty in the context of damages." *Perez*, 2020

WL 3798865, at *7.  Plaintiffs are domiciled in Texas.  [Doc. 80 at ¶¶ 2.01–2.06].  Thus, Texas

has a "direct interest" in Plaintiffs' recovery.  *Perez*, 2020 WL 3798865, at *7 (quotation omitted);

*see also Toyota Motor Co.*, 581 S.W.3d at 289 ("For purposes of damages under the most

significant relationship analysis, under Texas law, the most important factor is not where the injury

occurred but rather where the plaintiff is domiciled." (quotation omitted)).  And Defendants all

maintain their principal places of business in Minnesota, [Doc. 85 at ¶¶ 2.07–2.09], and are mostly

incorporated in Minnesota.  [*Id.*].[8]  Minnesota, therefore, has a "direct interest" in protecting

Defendants "against financial hardship."  *Perez*, 2020 WL 3798865, at *7 (quotation omitted).

This factor, which is to be afforded the most weight, weighs in favor of applying Texas or

Minnesota law.

D.      **The Place Where the Parties' Relationship is Centered**

Finally, the Court considers where the Parties' relationship is centered.  Restatement § 145.

Plaintiffs contend that this factor "is difficult for courts to assess in the context of product liability

cases" because consumers typically do not have any particular relationship with the manufacturer

of a product.  [Doc. 77 at 15]; *see also Elvig v. Nintendo of Am., Inc.*, 696 F. Supp. 2d 1207, 1212

(D. Colo. 2010) ("Ordinary purchasers of a Wii have no particular relationship with Nintendo,

except through the intercession of a retailer who mediates the delivery of the Wii to the purchaser

and the revenue to Nintendo.  It is difficult in such circumstances to ascribe much significance to

---

[8] Polaris Industries, Inc. is incorporated in Delaware.  [Doc. 80 at ¶ 2.08].  However, the Parties
do not argue that Delaware law should apply.

this factor."). Plaintiffs continue that if any relationship does exist, it is centered in Texas because the Vehicle was marketed, distributed, and sold in Texas, to Texas residents, and ultimately injured Texas residents. [Doc. 77 at 15]. Defendants agree that this factor is difficult to assess, but contend that "should the Court find it necessary to identify the center of the relationship between Polaris and Plaintiffs, the facts and Colorado law demonstrate that their relationship was centered in Colorado." [Doc. 85 at 15]. They argue that "[i]t was Colorado, its mountainous terrain, its well-known reputation for being a forum for off-road vehicle recreation, and Mr. Sanders'[s] prior connection to Silverton that motivated Mr. Sanders to purchase the Ranger for use in Colorado." [*Id.*].

"[W]here there is no pre-existing contractual relationship between the parties, as in a tort action like this one, the place where the relationship is centered is duplicative of the place of injury." *Grosskopf v. Chrysler Grp. LLC*, No. A-14-CA-801-SS, 2015 WL 6021851, at *5 (W.D. Tex. Oct. 14, 2015); *see also Crisman v. Cooper Indus.*, 748 S.W.2d 273, 278 (Tex. App. 1988) ("[T]his prong is inapplicable in this case, because the opposing parties had no relationship between them prior to the accident."). This factor lacks significance in products liability actions because "[a] plaintiff's mere contact with a defendant's product does not constitute the type of relationship Section 145 contemplates." *Grosskopf*, 2015 WL 6021851, at *5. Accordingly, the Court concludes that this factor is also neutral.

### E. Public Policy Considerations

Based on the Court's review, the § 145 factors favor applying either Texas or Minnesota damages law, as opposed to Colorado damages law. This conclusion is buttressed by an analysis of the applicable policy considerations identified in § 6 of the Restatement. Again, these public policy considerations include (1) "the needs of the interstate and international systems"; (2) "the

relevant policies of the forum"; (3) "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue"; (4) "the protection of justified expectations"; (5) "the basic policies underlying the particular field of law"; (6) "certainty, predictability and uniformity of result"; and (7) the "ease in the determination and application of the law to be applied."  Restatement § 6(2).

The Court starts with the policies of the interested states.  Colorado's non-economic damages cap serves the purpose of protecting defendants—specifically, *Colorado* defendants—from excessive liability.  *See Lanahan v. Chi Psi Fraternity*, 175 P.3d 97, 101 (Colo. 2008) (explaining that the cap serves to "protect individual defendants from excessive liability without unduly restricting plaintiffs' recoveries").  Indeed, the introductory paragraph to the statute limiting non-economic damages states:

> The general assembly finds, determines, and declares that awards in civil actions for noneconomic losses or injuries often unduly burden the economic, commercial, and personal welfare of *persons in this state*; therefore, for the protection of the public peace, health, and welfare, the general assembly enacts this section placing monetary limitations on such damages for noneconomic losses or injuries.

Colo. Rev. Stat. § 13-21-102.5(1) (emphasis added).  Thus, the purpose of § 13-21-102.5 is to protect *Colorado defendants* from excessive damages, *not* to protect out-of-state defendants from excessive liability in civil cases filed by out-of-state plaintiffs.  Contrary to Defendants' suggestion, *see* [Doc. 85 at 16], the Court is unpersuaded that Colorado has any interest in applying a non-economic damages cap to this case, even if the injury occurred in Colorado.  *See Lewis-DeBoer v. Mooney Aircraft Corp.*, 728 F. Supp. 642, 645 (D. Colo. 1990) ("Defendant has no significant links to Colorado.  Thus, defendant cannot claim the benefit of" Colorado's interest in protecting defendants from large verdicts.).  Thus, Colorado has minimal interest in seeing Colorado law applied to the damages assessment in this case.  *See Herrera v. Michelin N. Am.,*

*Inc.*, No. CIV. B-07-114, 2009 WL 700645, at *10 (S.D. Tex. Mar. 16, 2009) ("[T]his Court concludes . . . that Mexico has a lesser interest in the instant litigation because its governmental interests are not served where none of the plaintiffs are residents of Mexico, and there is no Mexican defendant that would benefit from its damages limitations."); *In re Aircrash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 948 F. Supp. 747, 758 (N.D. Ill. 1996) ("A state where an injury occurs has very little interest in insuring the compensation of the victim or protecting the tortfeasor when neither one is a state resident.").

Texas and Minnesota, meanwhile, do not mandate such damages limitations, though they could. *See Lewis-DeBoer*, 728 F. Supp. at 643 ("Under Texas law, there is no cap on the amount recoverable for non-economic personal injury."); *Newman v. Stryker Sales Corp.*, No. CIV. 09-2866 JRT/JJK, 2010 WL 3926200, at *9 (D. Minn. Sept. 30, 2010) (impliedly recognizing that Minnesota does not limit recovery of non-economic damages, in contrast to Ohio). This decision to not impose any upper limits on non-economic damages presumably reflects a policy objective of those states' legislatures. *Cf. Fanning v. Dianon Sys., Inc.*, No. 05-cv-01899 LTB CBS, 2006 WL 2385210, at *4 (D. Colo. Aug. 16, 2006) ("Connecticut does not have laws limiting the amount of personal injury damages against medical personnel which presumably reflects a policy or goal to deter negligent conduct in this area of law."). Texas undoubtedly has an interest in the amount of damages assessed to Plaintiffs in this case. *See Torrington*, 46 S.W.3d at 850 ("[A] plaintiff's domiciliary state usually has a strong interest in seeing its compensatory damages law applied."); *Enter. Prods.*, 340 S.W.3d at 481 (recognizing that a state "has an interest in ensuring that its citizens receive adequate compensation so that the costs of injured residents are not borne by the public"). And while Minnesota might have an economic interest in protecting corporations operating in the state from excessive liability, *see, e.g., Curtis v. TransCor Am., LLC*, 877 F. Supp.

2d 578, 594 (N.D. Ill. 2012) (recognizing that states have an interest in protecting resident businesses from excessive compensatory damages), unlike Colorado, it has not codified that interest by enacting a statutory limitation on non-economic damages.  *Newman*, 2010 WL 3926200, at *9.  Accordingly, these policy considerations support the application of Texas law.

The Court has considered the other § 6 policy considerations and cannot conclude that they require a different conclusion.  Defendants contend that applying Colorado law would protect the Parties' justified expectations because "Plaintiffs undoubtedly knew that, while in Colorado, they had availed themselves of, and were subject to, Colorado's laws intended to protect residents and visitors on its public roads." [Doc. 85 at 17].  They further argue that Colorado law would promote uniformity of results.  [*Id.*].  However, "[i]n tort cases where the parties have not previously contracted, 'the factors of the justified expectations of the parties and of certainty, predictability, and uniformity of result are of lesser importance.'"  *Toyota Motor Co.*, 581 S.W.3d at 290 n.6 (quoting *Vanderbilt Mortg. & Fin., Inc. v. Posey*, 146 S.W.3d 302, 314 (Tex. App. 2004)).  Furthermore, while Plaintiffs likely knew that they were subject to Colorado's *rules of conduct* while present in the state, the Court is not persuaded that the Parties' justified expectations would be protected by applying Colorado's *rules of recovery* in this case, which "relate more clearly to the state with which a party is identified." *Sabell*, 536 P.2d at 1166.  And in any event, any interest Colorado has in uniformly capping the damages recovered by non-resident plaintiffs injured in Colorado from non-resident defendants does not outweigh Texas's substantial interests in ensuring that its residents are adequately compensated for their injuries.

In sum, upon consideration of the § 145 factors in light of the § 6 policy considerations, the Court concludes that Texas law should apply here <u>with respect to the issue of limiting non-economic damages</u>.  The Court will thus **GRANT** Plaintiff's Motion for Determination of Law.

While this Order resolves the conflict of law with respect to the issue of damages, the Court notes that it is still unclear which state's substantive law applies to the liability issues in this case, which may cause complications should this case proceed to trial.  Should Defendants[9] identify any additional conflicts of law that relate to liability in this case, they should raise those issues in any forthcoming dispositive motion, which is due to the Court no later than June 1, 2023.  *See* [Doc. 93].

**CONCLUSION**

For the reasons stated herein, it is hereby **ORDERED** that:

(1)     Plaintiffs' Motion for Summary Judgment to Determine Substantive Law and Brief in Support [Doc. 77] is **GRANTED**; and

(2)     Texas law governs the issue of compensatory damages in this case.


DATED:  May 12, 2023                          BY THE COURT:

                                              _____
                                              Nina Y. Wang
                                              United States District Judge

---

[9] The undersigned's Uniform Civil Practice Standards provide that "[a]bsent leave of the Court, which will only be granted in exceptional circumstances, a party may file only one motion for summary judgment."  Civ. Practice Standard 7.1D(a).